```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
RASENE MYTON,

                Movant,
    -against-                              MEMORANDUM AND ORDER
                                           Case Nos.   08-CV-4314 (FB)
UNITED STATES OF AMERICA,                              11-CV-1710 (FB)
                                                       12-CV-1235 (FB)
                Respondent.
---------------------------------------------------------x
```

*Appearances:*
*For the Movant:*  
RASENE MYTON, *pro se*  
#55485-053  
USP Lee  
Post Office Box 305  
Jonesville, Virginia 24263

*For the Respondent*:  
LORETTA E. LYNCH, ESQ.  
United States Attorney  
Eastern District of New York  
271 Cadman Plaza East  
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

      Rasene Myton is currently incarcerated pursuant to a judgment convicting him of various violations of the Hobbs Act, 18 U.S.C. § 1951, and 18 U.S.C. § 924(c). On December 23, 2009, the Court denied Myton's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. On February 7, 2012, the Court denied Myton's motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). *See Myton v. United States*, 2012 WL 397741 (E.D.N.Y. Feb. 7, 2012).

      Myton has timely moved for reconsideration pursuant to Federal Rule of Civil Procedure 59(e).[1] He argues that the Court's prior decisions misapprehended each

---

[1] Separate case numbers were assigned to the original § 2255 motion, the Rule 60(b) motion and the Rule 59(e) motion. The Clerk is directed to enter this memorandum and order in all three cases.

of the eight challenges to his conviction and sentence. Rather than waste time refuting that contention, the Court will briefly address each claim as Myton now presents it.

**A. Sentence Enhancement**

In his original § 2555 motion, Myton argued that his counsel was ineffective for failing to raise a constitutional challenge to sentencing enhancements based on facts found by the Court.[2] Myton's sentence was below the relevant statutory maximums, and such a sentence does not implicate the Sixth Amendment right to a jury trial as long as the sentencing court treats the Guidelines as advisory. *See United States v. Holguin*, 436 F.3d 111, 118 n.1 (2d Cir. 2006) (Furthermore, because *Booker* instructs that sentencing ranges established by the Guidelines are only advisory, the low and high end of these ranges do not establish statutory minima or maxima implicating Sixth Amendment *Apprendi* concerns.").

Myton has clarified that he faults his counsel for failing to raise an "as applied' challenge to the Court's fact-finding. Writing for only himself, Justice Scalia opined in *Gall v. United States*, 552 U.S. 38 (2007), that "[t]he door . . . remains open for a defendant to demonstrate that his sentence, whether inside or outside the advisory Guidelines range, would not have been upheld but for the existence of a fact found by the sentencing judge and not by the jury." *Id.* at 60. No court, however, has embraced Justice Scalia's reasoning. *See United States v. Treadwell*, 593 F.3d 990, 1017 (9th Cir. 2010) ("We . . . join the Fourth, Sixth, and Seventh Circuits in holding that this argument is too creative for

---

[2]The Court found Myton responsible for the death of robbery victim Orland Davis in 2000, resulting in a base offense level of 43.

the law as it stands." (internal quotation marks and citations omitted)). Counsel was not ineffective for failing to press an argument lacking any legal support.

**B. Victim Misidentification**

In his original § 2255 motion, Myton argued that his counsel was ineffective for failing to challenge a possible misidentification of the victim of a 1998 robbery. Both trial and appellate counsel unsuccessfully pursued the argument that as a result of the misidentification, there was insufficient evidence supporting the conviction. *See United States v. Myton*, 2005 WL 1397208, at *8 (E.D.N.Y. June 14, 2005) ("The identity of the victim was simply not part of the Government's burden of proof."), *aff'd*, 224 F. App'x 125, 130 (2d Cir. May 22, 2007) ("It is clear that the government adduced sufficient evidence to establish the elements of a Hobbs Act robbery conviction.").

Myton has clarified that his claim is based not on insufficiency of the evidence, but on his due process right to hold the government to the theory of guilt it advanced at trial. *See Dunn v. United* States, 442 U.S. 100, 106 (1979) ("To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process."). That theory was set forth in the Court's memorandum and order denying Myton's motion for a judgment of acquittal:

> At trial, the Government established that Myton and other members of the conspiracy drove to the Bronx, where they waited in a blue van for a man in a gray BMW to drive by. Co-conspirator Anthony Trotman ("Trotman") testified that Myton and [co-conspirator Kingsley] Bernard had previously received information that the man was a large-scale drug dealer. According to Trotman, when the target of the robbery showed up, Myton drove the van into the gray BMW; Trotman

and others then pulled the drug dealer out of his car and put him in the van. . . .

The drug dealer was then taken to [co-conspirator Arron] Myvett's house in Brooklyn and beaten. Members of the conspiracy later went to the Bronx, where they took $36,000 from the drug dealer's wife.

*Myton*, 2005 WL 1397208, at *3.

An eyewitness to the abduction was the only trial witness to identify the drug dealer by name. After trial, the government informed defense counsel that Myton's co-conspirators had identified a different individual as the victim in a post-trial photo array. *See id.* at *4. However, there is no question but that the person abducted by Myton and his co-conspirators—whatever his name—was the drug dealer they intended to rob. Thus, there has been no "bait and switch" by the government as to its theory of guilt.[3]

## C. Double Jeopardy/Estoppel

Myton next argued that his counsel was ineffective for failing to challenge, on double jeopardy grounds, a superseding indictment ("the S-6 Indictment") returned after his conviction on a prior indictment ("the S-4 Indictment"). He alternatively phrased his claim as resting on "estoppel grounds." Since the crimes charged in the S-6 Indictment were different from those charged in the S-4 Indictment, there was no double jeopardy violation. *See United States v. Bruno*, 661 F.3d 733, 740-41 (2d Cir. 2011) ("[A]fter a

---

[3] Myton also argues that uncertainty as to the victim's name deprived him of his Sixth Amendment right to a unanimous verdict. However, as noted in the text, the evidence established a particular victim of the robbery. Just as the victim's name was not an integral part of the government's theory of guilt, it was not part of the jury's verdict.

4

defendant is placed in jeopardy for a specific offense . . . , the defendant may not be tried or punished a second time *for the same offense.*" (emphasis added)).

Myton argues that an indictment may not be superseded once jeopardy has attached. That argument elevates form over substance. It is clear that a defendant convicted (or acquitted) of one crime may thereafter be prosecuted for a different crime. That is precisely what happened here: A grand jury charged Myton with additional crimes, those crimes were prosecuted in a second trial and Myton was convicted by a second petty jury. That the subsequent indictment was labeled a "superseding" indictment was a matter of administrative convenience only.

**D. Speedy Trial**

Myton argued that his counsel was ineffective for finding to challenge his convictions under the S-6 Indictment on speedy trial grounds. The Court rejected the claim on the grounds (a) that only 53 non-excludable days elapsed between the S-6 Indictment and trial, *cf.* 18 U.S.C. §3161(c)(1) (allowing 70 days); and (b) that the S-6 Indictment did not "inherit" the non-excludable delays in trying the S-4 Indictment because the crimes charged in the former were not—are were not required to be—joined with the crimes charged in the latter. *See Myton*, 2012 WL 397741, at *2 (*citing United States v. Roman*, 822 F.2d 261, 264 (2d Cir. 1987)).

Myton now argues that more than 70 non-excludable days elapsed because the Court failed to make the required findings to exclude the period from October 31, 2003, to April 16, 2004, under the "ends of justice" exception to the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(7)(A) (formerly 18 U.S.C. § 3161(h)(8)(A)). The transcript of the

5

status conference at which the exclusion was discussed has long since been archived. Over the course of almost 19 years, however, the Court's consistent practice has been to state the reasons justifying an "ends of justice" exlcusion on the record; the Court is quite confident that it followed that practice in Myton's case.

In any event, Myton is not directly claiming a speedy trial violation; he is claiming that his counsel provided ineffective assistance for failing to raise such a challenge. In that regard, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In the circumstances of this case, the only plausible outcome of a speedy trial challenge, had it been raised, would have been a dismissal without prejudice. *See* 18 U.S.C. § 3162(a)(2) ("In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on . . . the administration of justice.) That result does not constitute prejudice under *Strickland*. *See Patiwana v. United States*, 928 F. Supp. 226, 241 (E.D.N.Y. 1996), *aff'd*, 173 F.3d 845 (2d Cir. 1999); *accord United States v. Rushin*, 642 F.3d 1299, 1309-10 (10th Cir. 2011) ("In no meaningful sense has Defendant established a reasonable probability that the result or outcome of the proceeding to which he was subjected would have differed if the indictment on which he stands convicted had been dismissed without prejudice." (internal quotation marks omitted)).[4]

---

[4]The Supreme Court's holding that failure to make the requisite findings for an "ends of justice" exclusion is *per se* reversible error, *see Zedner v. United States*, 547 U.S. 489,

**E. Constructive Amendment**

Myton argued that his counsel was ineffective for failing to challenge the Court's instruction to the effect that a defendant need not have intended an effect on interstate commerce. Myton concedes that the Court's instruction was based on well-established law that "the government need not prove that it was the defendants' purpose to affect commerce; it suffices that their conduct had that natural effect." *United States v. Arena*, 180 F.2d 380, 390 (2d Cir. 1999), *overruled on other grounds by Scheidler v. National Org. for Women, Inc.*, 537 U.S. 393, 403 n.8 (2003). He argues, however, that the instruction allowed the government to constructively amend the indictments, which alleged, in pertinent part, that he had "knowingly and intentionally" conspired and attempted to affect interstate commerce and, with respect to completed offenses, had "knowingly and intentionally" succeeded in doing so.

"To prevail on a constructive amendment claim, a defendant must demonstrate that the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify *essential elements* of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. D'Amelio*, 683 F.3d 412, 416 (2d Cir. 2012) (citation and internal quotation marks omitted). The Supreme Court has rejected

---

508 (2006), does not alter the analysis. *Zedner* involved a speedy trial challenge raised on direct appeal, *see id.* at 496-97, and expressly noted that dismissal without prejudice was a possible remedy. *See id.* 509 ("The sanction for a violation of the [Speedy Trial] Act is dismissal, but we leave it to the District Court to determine in the first instance whether dismissal should be with or without prejudice.").

7

the argument that "it constitutes an unconstitutional amendment to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it." *United States v. Miller*, 471 U.S. 130, 144 (1985).

The indictments plainly and adequately alleged that Myton had violated the Hobbs Act in specified ways, and the jury unquestionably found him guilty of the same violations. Since, as noted, an intent to effect interstate commerce was not an essential element of those charges, the omission of the indictments' language to that effect in the jury instructions was not a constructive amendment. *See United States v. Jackson*, 38 F. App'x 59, 62 (2d Cir. 2002) ("[T]he willfulness allegation [in an indictment charging a general-intent crime] was superfluous."); *accord United States v. Malloy*, 568 F.3d 166, 178 (2d Cir. 2009) ("[D]espite the inclusion of the word 'knowingly' [in the indictment], the government was not required to prove that [the defendant's] actions were 'knowing' in order to obtain a conviction[.]"); *United States v. Deverso*, 518 F.3d 1250, 1258 n.2 (11th Cir. 2008) ("[T]he Government's inclusion of the word "knowingly" in the indictment was mere surplusage . . . . Surplusage in an indictment may be deleted without any legal error.").

**F. Effect on Interstate Commerce**

In a related challenge, Myton argued that his counsel was ineffective for failing to challenge the Court's instruction on the interstate commerce element of a Hobbs Act robbery. According to Myton, the Court told the jury that the element was satisfied even it found that Myton's conduct had no effect on interstate commerce.

Myton is simply incorrect. The Court instructed the jury that it did not have to find an actual effect on interstate commerce *with respect to attempted robbery*: "If you

8

decide that interstate commerce would potentially or probably be affected if the defendant had successfully and fully completed his actions, then the element of affecting interstate commerce is satisfied.  You do not have to find that interstate commerce was actually effected."  The Court immediately explained that the same was not true for a completed robbery: "However, if the defendant has finished his actions, and done all he intended to do, and you determine there has been no effect on interstate commerce, then you cannot find the defendant guilty."

## G.  Multiplicitous Charges

Myton argued that his counsel was ineffective for failing to argue that the Hobbs Act conspiracy charge and the three substantive Hobbs Act charges all merged into a single offense.  He cited *Universal C.I.T. Credit Corporation*, 344 U.S. 218 (1952), which held that "it is a course of conduct rather than the separate items in such course that constitutes the punishable offense [under the Fair Labor Standards Act]."  *Id.* at 229.  The Court rejected the claim based on the well-settled rule that "conspiracy is a crime that is separate and distinct from the substantive offense that is the object of the conspiracy." *United States v. Rosa*, 17 F.3d 1531, 1543 (2d Cir. 1994); *see also United States v. Feola*, 420 U.S. 671, 693 (1975) ("[C]onsecutive sentences may be imposed for the conspiracy and for the underlying crime.").

On reconsideration, Myton argues that the rule does not apply to the Hobbs Act, which includes conspiracy, attempt, and the completed offense in a single prohibition.  He continues to argue that the appropriate "unit of prosecution" under the Hobbs Act is an overall scheme to interfere with interstate commerce.

9

The Supreme Court long ago rejected Myton's argument. In *Callanan v. United States*, 364 U.S. 587 (1952), it concluded that two instances of extortion could be punished as separate violations of the Hobbs Act. *See id.* at 596 ("If petitioner had committed two separate acts of extortion, no one would question that the crimes could be punished by consecutive sentences."). It then held that same result was "no less clear" in a case in which a single scheme led to convictions for both a substantive Hobbs Act violation and a conspiracy to commit the same crime. *Id.*[5]

## H.  Mandatory Minimum Sentences

On his three § 924(c) convictions, Myton was sentenced to mandatory consecutive sentences of five, twenty and twenty-five years.[6] He has argued that the Supreme Court's recent decision in *Abbott v. United States*, 131 S. Ct. 18 (2010), requires *vacatur* of the first two sentences.

---

[5]Although it is not entirely clear, Myton appears to argue not only that the Hobbs Act charges should have merged into a single offense, but also that the § 924(c) charges should have merged with them. That argument, too, is without merit. *See United States v. Khalil*, 214 F.3d 111, 120 (2d Cir. 2000) ("[There is] no doubt that § 924(c) describes a firearm offense that is distinct from the underlying crime of violence in connection with which the firearm was carried or used, and that Congress intended the punishments imposed on a defendant convicted of both offenses to be cumulative. In light of the explicit congressional directives, the imposition of cumulative punishment . . . in a single prosecution does not violate the Double Jeopardy Clause.").

[6]On the first and second convictions, Myton was sentenced under the version of § 924(c) in effect until November 1998. *See* 18 U.S.C. § 924(c) (1996) (mandating sentences of five years for first offense and twenty years for subsequent offenses). On the third conviction, he was sentenced under the version that has been in effect since that date. *See* 18 U.S.C. § 924(c) (mandating sentence of twenty-five years for subsequent offenses).

Section 924(c) mandates a specified minimum sentence "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law." 18 U.S.C. § 924(c)(1). In *Abbott*, the Supreme Court held that a defendant's sentence on a crime of violate or a drug-trafficking crime underlying a § 924(c) conviction did not trigger that "except" clause. *See* 131 S. Ct. at 29.

*Abbott* is of no use to Myton for several reasons. First, the case says nothing about sentences for *multiple* § 924(c) convictions. Second, it overruled the more defendant-friendly rule in effect in the Second Circuit. *See United States v. Whitley*, 529 F. 3d 150, 158 (2d Cir. 2008) ("[T]he clause exempts Whitley from the consecutive ten-year minimum sentence for discharging a firearm because he is subject to the higher fifteen-year minimum sentence [for being an armed career criminal].") Finally, the few courts to have addressed the issue have uniformly concluded that *Abbott* does not apply retroactively to cases on collateral review. *See Tate v. Rios*, 2012 WL 3028006, at *4 (E.D. Cal. July 24, 2012); *United States v. Alexander*, 2011 WL 6301258, at *3 (S.D. Tex. Dec. 16, 2011).

**I. Conclusion**

For the foregoing reasons, Myton's motion is denied. Because he has not made a substantial showing of a denial of his constitutional rights, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

        **SO ORDERED.**

                                            _____
                                            FREDERIC BLOCK
                                            Senior United States District Judge

Brooklyn, New York
September 17, 2013